UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW RALPH MCGILL,

                Plaintiff,                Case No. 2:17-cv-13071
                                          District Judge Terrence G. Berg
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 15) and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 15),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

        Plaintiff, Andrew Ralph McGill, brings this action under 42 U.S.C. § 1383

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for retirement insurance benefits (RIB).

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 14), the

Commissioner's cross-motion for summary judgment (DE 15), Plaintiff's response

(DE 16), and the administrative record (DE 11).

### A.    Administrative History

On June 4, 2009, Plaintiff filed an application for RIB.  (R. at 21-27, 213.)

On or about June 9, 2009, Plaintiff was informed that he was "entitled to monthly

retirement benefits beginning September 2009."  (R. at 28-30.)

The ensuing years involved multiple recalculations of Plaintiff's benefits:

- **Plaintiff's 2010 income:**  On or about March 8, 2011, Plaintiff was informed that he was overpaid $4,990.00, based on his 2010 earnings of $24,250.00 and what should have been withheld from his 2010 benefits.  (R. at 81-83.)  Plaintiff's 2010 income tax return is dated April 2011, within which he reported **$17,722 in "[w]ages, salaries, tips, etc." on Form 1040 (Line 7), $13,523 in business loss on Schedule C, and $8,234 in unreimbursed employee business expenses on Form 2106-EZ.**  (R. at 31-50.)[1]

- **Plaintiff's 2011 income:**  Plaintiff's 2011 income tax return is dated April 2012.  He reported **$22,414 in wages, $11,963 in business loss, and $10,734 in unreimbursed employee business expenses.**  (R. at 51-80.)

- **Plaintiff's 2012 income:**  Plaintiff's 2012 income tax return is dated April 2013.  He reported **$46,593 in "[w]ages, salaries, tips, etc.," $16,503 in business loss, and $13,535 in unreimbursed employee business expenses.**  (R. at 84-113.) On June 12, 2013, Plaintiff was informed that the SSA could

---

[1] Schedule C concerns "Profit or Loss From Business," Form 2106 concerns "Employee Business Expenses," and Form 2106-EZ concerns "Unreimbursed Employee Business Expenses."  *See* www.irs.gov.

not pay benefits for 2012, due to his 2012 earnings of $59,548.00, and concluded that it paid him $21,474.50 more than it should have for 2012.  (R. at 114-121.)  It appears that this decision was the subject of Plaintiff's July 2, 2013 request for reconsideration, which raised the issues of consideration of Schedule C and Form 2106 amounts.  (R. at 122; *see also* R. at 123-124.)

- **Plaintiff's 2013 income:**  Plaintiff's 2013 income tax return is dated April 2014.  He reported **$44,050 in "[w]ages, salaries, tips, etc.," $16,957 in business loss, and $18,422 in unreimbursed employee business expenses.**  (R. at 134-155.)

Then, during 2014, the following adjustments took place:

- On January 4, 2014, the SSA informed Plaintiff that it should have withheld $10,206.00 from his benefits for **2011**, during which time he earned $28,285.00.  (R. at 127-130.)

- On March 18, 2014, the SSA informed Plaintiff that none of his benefits should have been withheld for **2010**, a year in which he reported earnings of $10,727.00; therefore, he was due the $4,990.00 that had been withheld.  (R. at 131-133.)  According to Plaintiff, this was an adjustment to accept his 2010 Schedule C amount.  (DE 14 at 8.)

- In a notice dated June 4, 2014, the SSA changed Plaintiff's monthly benefits for several time periods, namely "as of May **2012**[,]" "starting September **2013**[,]" and "beginning December **2013** . . . ."  (R. at 156-160 (emphases added).)  Plaintiff claims that the change to his **2012** income was based on recognition of his Form 2106-EZ expenses.  (R. at 157, DE 14 at 15-16.)

- On July 2, 2014, the SSA informed Plaintiff, *inter alia*, that his "earnings amount of $28,285.00 posted to [his] record for **2011** [wa]s correct."  (R. at 161-162.)

On November 1, 2014, the SSA determined that Plaintiff received $15,817.00 more in social security benefits than he was due, based on a review of his earnings – *i.e.*, Line 7 "wages, salaries, tips, etc." - for 2011, 2012, and 2013.  (R. at 163-167.)  According to Plaintiff, this notice erroneously omitted the Schedule C deductions and "was based on tax return income rather than gross income, the SSA standard."  (DE 14 at 17, DE 16 at 5.)

### B.    The SSA's February 2, 2015 notice of reconsideration

In November 2014, Plaintiff filed a request for reconsideration, alleging that the SSA did not consider "deductions / adjustments for business losses (Schedule C)[,]" and "deductions from Form 2106-EZ . . . ."  (R. at 168.)  Plaintiff filed another request for reconsideration on December 22, 2014, along with a narrative in which he admitted that his calculations "differ slightly from the way Social Security does its calculations[.]"  (R. at 172-174.)

On February 2, 2015, the SSA issued a notice of reconsideration, which informed Plaintiff that his claim had been reconsidered and that the original decision had been revised.  (R. at 175-180.)  Among other things, the SSA noted that "the only allowable deduction from wages is a self-employment income (SEI) loss[,]" and that "[t]here are no provisions for deducting expenses from income reported as wages by an employer."  (R. at 179.)  The SSA determined that a total of $16,322 "must be used to determine the amount deducted" from Plaintiff's

4

benefits for 2011, but the SSA also stated that "no additional evidence has been submitted for tax years 2012 and 2013, therefore this determination is limited to 2011 earnings only." (*Id.*)  Accordingly, the SSA deemed the "amount to be withheld for 2011" as $1,081.00, which is an amount that Plaintiff does not dispute.  (R. at 179-180, DE 14 at 9.)

### C.    The March 17, 2015 Administrative Hearing

On March 17, 2015, Plaintiff requested a hearing by an ALJ.  (R. at 182.) By a petition dated March 27, 2015, he supplied a "Summary of Income Tax Returns and Related Information." (R. at 183-202.)[2]

On August 18, 2015, ALJ Anthony Smereka conducted a hearing, at which Plaintiff testified and represented himself.  (R. at 274-291.)  After the ALJ received Exhibits 1 through 36 into evidence (*see* R. at 21-260), Plaintiff testified that Schedule C deductions "do appear to have been applied[.]" (R. at 280.)

Then, Plaintiff offered his testimony about his "additional argument," namely that "because of [his] particular form of employment . . . [,]" he "also

---

[2] Interestingly, the Court notes that Plaintiff's summary chart lists his "Social Security Income" for 2010, 2011 and 2012 as $24,250, $28,285, and $59,548, respectively, each of which is an amount that appears in a Social Security Administration notice and on the certified earnings record.  (R. at 81, 127, 114, 161; *see also* R. at 226.)  These amounts are not consistent with Line 7 of his respective tax returns.  (*See* R. at 31, 51, and 84.)  However, he lists his 2013 "Social Security Income" as $44,050, which is consistent with Line 7 of his tax return for that year (R. at 134), rather than the $56,910 listed on the certified earnings record (R. at 226).  (*See* R. at 202.)

should be permitted the Schedule 2106 deductions prior to the determination of the actual allowable income." (*Id*.) This included discussion about the age of 42 U.S.C. § 409, by which the SSA defines "wages," and the cost of living index. (R. at 281-282.) The ALJ and Plaintiff also discussed Plaintiff's "Summary of Income Tax Returns and Related Information." (R. at 283-284, 202.) With reference to this chart, Plaintiff argued that the 2106 deductions should have been taken into consideration when calculating his 2011 and 2012 benefits, apparently because those were years in which he claimed to have had "allowable income." (R. at 284-285.)

Combining his pre-hearing brief and his hearing testimony, Plaintiff appears to be arguing that consideration of his Form 2106 deductions of $10,734 for 2011 and $13,535 for 2012 "would eliminate the 2011 overpayment penalty and reduce the 2012 overpayment to $14,870, for which Petitioner would owe a penalty of $7,435[.]" (R. at 287, 197.) Moreover, when the $4,990 credit from 2010 is applied to that amount, the "total overpayment for the period of years" would be reduced to $2,445. (*Id*.) Plaintiff also registered his concern about the "sequence of reviews," which the ALJ summarized as "even though they took your subsequent arguments into consideration[,] they didn't go back and do a reassessment of whether or not the earlier overpayments were correct or not." (R. at 288-289.)

**D.     The Administrative Decision**

In a September 16, 2015 written decision, ALJ Smereka framed the issue as

whether Plaintiff "has been overpaid benefits under section 204(a)(1)(A) of the

Social Security Act[.]"  (R. at 15.)  "Section 204 of the Act provides for adjustment

as set forth in §§ 404.502 and 404.503, in cases where an individual has received

more or less than the correct payment due under title II of the Act."  20 C.F.R. §

404.501(a).  ALJ Smereka concluded that Plaintiff had been overpaid within the

meaning of the Social Security Act and was liable for the overpayment.  (R. at 12-

20.)

In arriving at his decision, the ALJ relied upon 20 C.F.R. § 404.504, which

provides that "[t]he amount of an overpayment or underpayment . . .

> . . . is the difference between the amount paid to the beneficiary and
> the amount of the payment to which the beneficiary was actually
> entitled. Such payment, for example, would be equal to the difference
> between the amount of a benefit in fact paid to the beneficiary and the
> amount of such benefit as reduced under section 202(j)(1), 202(k)(3),
> 203(a), or 224(a), or as increased under section 202(d)(2), 202(m), or
> 215(f) and (g). In effecting an adjustment with respect to an
> overpayment, no amount can be considered as having been withheld
> from a particular benefit which is in excess of the amount of such
> benefit as so decreased.

20 C.F.R. § 404.504.

Citing Section 404.504, the ALJ specifically concluded that Plaintiff was

overpaid benefits in the amount of $1,081.00 in 2011 and $14,202.00 in 2012.  (R.

at 16-17.)  In other words, Plaintiff was liable for a total amount of $15,283.00  in

overpaid benefits from 2011 and 2012.  (R. at 18.)

### E.    The Appeal Council's Decision & The Instant Lawsuit

On October 17, 2015, Plaintiff requested review of the hearing decision /

order.  (R. at 6-11, 261.)  His supplemental petition is dated May 12, 2017.  (R. at

262-273.)  On July 26, 2017, the Appeals Council denied Plaintiff's request for

review.  (R. at 1-5.)  Thus, ALJ's decision became the Commissioner's final

decision.

Plaintiff timely commenced the instant action on September 19, 2017.  (DE

1.)  Ordinarily, complaints are just a few pages in cases involving a review of

Social Security Disability or Supplemental Security Income decisions.  Here,

Plaintiff's initiating document consists of a 4-page form complaint (DE 1 at 1-4),

which is lengthened by 9 to 10 narrative pages setting forth several paragraphs of

procedural history and arguments and requesting multiple forms of relief (*Id*. at 5-

14).[3]  Among topics averted to in his narrative, Plaintiff asserts that the Social

---

[3] Plaintiff also attaches several other items that are part of the administrative
record, including:  **(a)** the ALJ's September 16, 2015 decision (DE 1 at 15-21, R. at
12-20); **(b)** the AC's July 26, 2017 notice (DE 1 at 22-25, R. at 1-5); **(c)** the SSA's
June 12, 2013 notice (DE 1 at 26-33, R. at 114-121); **(d)** the SSA's June 4, 2014
notice (DE 1 at 34-38, R. at 156-160); and, **(e)** a "Summary of Income Tax Returns
and Related Information" for the years 2010-2013 (DE 1 at 39, R. at 202).

Security Act is outdated[4] and that the SSA violates the Fifth Amendment's Taking

Clause and, presumably, the Fourteenth Amendment's Equal Protection Clause by

treating diverse types of employees differently.  (DE 1 at 11-13.)  In essence, he

argues that the statutory scheme is unfair, particularly in light of the evolving

nature and venues of employment.  At base, however, this is an RIB case, in which

Plaintiff seeks "review of a decision regarding Disability Insurance Benefits under

Title II of the Social Security Act," and invokes "jurisdiction [as] proper under 42

U.S.C. § 405(g)" (DE 1 at 2).[5]  As such, Plaintiff challenges the determinations of

the Social Security Administration, the ALJ, and/or the Appeals Council, because

they are allegedly "not supported by substantial evidence in the record" and "based

on legal error."  (*Id.* at 3.)  This Court's report and recommendation, therefore,

focuses on the administrative record, and the Court's review is governed and

circumscribed by 42 U.S.C. § 405(g).[6]

---

[4] Specifically, he alleges that "Congress could not have anticipated the specific
needs and applicability to on-line colleges and universities and their faculty
members when these statutes were enacted 30 years ago, since the Internet and
these institutions did not yet exist."  (DE 1 at 12 ¶ 10.)

[5] Although Plaintiff files his complaint on a form meant for review of a decision
regarding *social security disability* (disability insurance benefits under Title II) or
*supplemental security income* (supplemental security income under Title XVI),
retirement insurance benefits are provided for by Title II.  *See, e.g., Ridge v.
Barnart*, 232 F.Supp.2d 775, 785 (N.D. Ohio 2002).

[6] If the Court were inclined to give any greater scope to Plaintiff's complaint, his
motion for summary judgment makes no developed arguments regarding the

### F.    Standard of Review

The District Court has narrow jurisdiction for reviewing the Commissioner's final administrative decisions under 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

---

Taking and Equal Protection Clauses of the United States Constitution.  (*See* DE 14.)  Arguments that are undeveloped may be treated as waived.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted); *see also United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  Merely throwing around the names of constitutional clauses or amendments, even if in a certified complaint, does not cut it.  (*See*, *e.g.*, DE 1 at 3-4, 11, 13.)

1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

G. **Discerning Plaintiff's statements of error**

1. **Plaintiff's *pro se* status**

At the outset, the Court takes Plaintiff's *pro se* status into consideration when reading his filings.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]").  Nonetheless, "it does not follow that courts must excuse a pro se plaintiff's failure to comply with straightforward rules for which no legal training is required."  *In Re: Ryan Edwards; Leslie Edwards, Debtors. Community Financial Services Bank, v. Ryan Edwards,* No. 18-5625, 2019 WL 193547, at *4 (6th Cir. Jan. 15, 2019) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).

## 2.    Procedural and formatting problems

The Court has some concerns about the formatting of Plaintiff's briefing. Preliminarily, it is not double-spaced and uses type size which appears to be smaller than 14-point font, making it questionable whether Plaintiff's 19-page brief exceeds the 25-page limit.  E.D. Mich. LR 5.1(a)(2),(3) ("Format"), 7.1(d)(3) ("Length of Briefs.").  Further, Plaintiff's 1-page narrative does not present "a concise statement of the issues presented . . . [,]" E.D. Mich. LR 7.1(d)(2) ("Form of Required Briefs.").[7]  At the risk of seeming petty in these criticisms, the Court's

---

[7] In addition, my Practice Guidelines for Social Security cases require that:
> All motions and briefs must comply with Local Rule 7.1.  The parties are particularly reminded of the requirement that all briefs must include an "Issues Presented" page.  On that page, the parties shall outline the issues to be presented in their briefing. In the case of a motion for summary judgment

bigger concern is that Plaintiff's presumed 3 "issues presented" do not align with

the multiple issues listed in Plaintiff's "table of contents" (DE 14 at 5) and the

corresponding pages of Plaintiff's argument section (DE 14 at 7-20).  Nonetheless,

the Court has done its best to discern the specific issues fairly raised by Plaintiff's

"issues presented" and will organize its discussion as follows:  **(1)** accounting for

Plaintiff's 2010 benefits; **(2)** Form 2106 unreimbursed employee business

expenses; **(3)** review of evidence under 20 C.F.R. § 404.522 and the

Administrative Procedures Act, which is codified at 5 U.S.C. §§ 551 to 559, 701 to

706, 1305, 3105, 3344, 4301, 5335, 5372, 7521; and, **(4)** whether the SSA is bound

by its June 4, 2014 notice.

## H.    Discussion

### 1.    Accounting for Plaintiff's 2010 benefits

Plaintiff's first statement of error is labeled "the lost, found, and lost 2010

refund."  (DE 14 at 7-8.)  By way of background, in a statement dated July 16,

2013, Plaintiff informed the Social Security Administration that, during 2010, he

repaid $4,574 "for exceeding the earnings limit," but also stated that he had not

---

or remand, the "Issues Presented" must indicate the error allegedly
committed by the Administrative Law Judge, i.e., the bases for the appeal
and grounds for reversal.  Within the parties' briefs, the issues presented
should be labeled as section headings, and should match the items listed on
the "Issues Presented" page.  Any issue addressed in the brief that is not both
1) included in Issues Presented and 2) labeled as a section heading within the
brief, <u>will not be considered by the Court</u>."  *See* www.mied.uscourts.gov.

been aware that he could deduct his Schedule C amount. (R. at 125-126.) As noted above, on March 18, 2014, the SSA informed Plaintiff that none of his benefits should have been withheld for 2010, a year in which he reported earnings of $10,727.00; therefore, he was due the $4,990.00 that had been withheld. (R. at 131-133.)

Plaintiff discussed the $4,990 credit for 2010 both in his March 27, 2015 pre-hearing brief and during the August 18, 2015 hearing. (R. at 186, 197, 287.) And, at the hearing, the ALJ understood that Plaintiff was concerned about re-assessment of earlier overpayments. (R. at 288-289.) Here, Plaintiff argues that this credit has been lost and is "absent from the ALJ's final decision[.]" (DE 14 at 8.) Elsewhere in his briefing, Plaintiff characterizes "the 2010 refund decision" as having been affirmed by the ALJ at the administrative hearing, but "absent from his final decision." (DE 14 at 14; *see also* DE 16 at 3-4.) In conclusion, Plaintiff claims he is "still caught in limbo in search of a promised refund of $4,990, an inequity that the ALJ ignored . . . ." (DE 14 at 21.)

Whatever Plaintiff believes to have been contained within his March 27, 2015 pre-hearing brief or during the August 18, 2015 hearing testimony, the fact remains that his March 17, 2015 request for hearing by the ALJ only states that he "disagree[s] with the determination because[:]

> The decision to allow business loss deductions for 2011 also should
> have been applied to 2012 and 2013. Also similar deductions for

14

work related expenses (teaching) should have been permitted, as they
were in 2012 in a prior review.

(R. at 182.) Thus, the Commissioner is correct in pointing out that "Plaintiff only

requested that the ALJ recalculate the correct overpayment amounts for 2011-

2013." (DE 15 at 11.) Moreover, as closely as the Undersigned has considered the

administrative record, the existence of a credit is not readily apparent from other

documents, such as the SSA Payment Worksheet (R. at 181) or the April 30, 2015

Title II overpayment Summary (R. at 221-224). Thus, as the Commissioner states,

Plaintiff "must look to the agency to determine . . . whether the 2010 credit was

applied . . . ." (DE 15 at 11.) While it would have been ideal and efficient for this

issue to have been resolved below, the ALJ's decision addressed the issue as

framed by Plaintiff in his request for review, and the Court is unable to venture

further based on the administrative record before it.

### 2. Form 2106 Unreimbursed Employee Business Expenses

Plaintiff next argues that the primary statute upon which the ALJ acted –

Section 211 of the Social Security Act (42 U.S.C. § 411) – is outdated and based

on the "pre-internet" era. (DE 14 at 9-13; *see also* DE 16 at 4.) However, even if

this statue is "inappropriate for the Internet era[,]" and "may not be what Congress

intended[,]" (DE 14 at 12), an ALJ is bound by the law as it stands at the time of

his or her decision and is not, as Plaintiff would have it, obliged "to look beyond

the statute per se to consider the environment under which it was being

implemented[.]"  (DE 14 at 13.)  Nor is the ALJ obligated to consider "the relevance to the times of the dated statute upon which he based his judgment[.]" (DE 14 at 13-14.)

The ALJ expressly discussed Sections 211(a) and 209(b) of the Social Security Act, *i.e.*, 42 U.S.C. § 409 ("'Wages' defined"), 411(a) ("Definitions relating to self-employment").  (R. at 16.)  In addition, the ALJ went on to explain that "the aforementioned portions of the Act considered in conjunction with the regulations only allow for a deduction of SEI loss from his total wage in determining the amount of benefits to be withheld."  (R. at 17.)  In fact, as Plaintiff admits, "[t]here is no question that the ALJ based his decision on existing law[.]" (DE 14 at 13.)  As such, the Court should affirm the ALJ's treatment of Plaintiff's Form 2106-EZ unreimbursed employee business expenses and not take up Plaintiff's invitation to conclude that *impossibiluum nulla obligation est*, or "a legal obligation that is impossible to perform must be excused."  (DE 14 at 12; www.oxfordreference.com.)  If Plaintiff takes issue with the staleness of the statute, he should petition Congress, not the Judiciary, to modernize it.

### 3. Review of evidence under the 20 C.F.R. § 404.522 and Administrative Procedures Act

Plaintiff next questions whether the ALJ considered "all available evidence . . . ."  (R. at 16; *see also* DE 14 at 3.)  The relevant regulation provides that, "[a]fter a timely submission of evidence by the overpaid individual," the SSA "will

16

consider all available evidence related to the overpayment." 20 C.F.R. § 404.522(c). Similarly, Plaintiff claims that the ALJ "did not fulfill APA requirements[.]" (DE 14 at 14-15; *see also* DE 16 at 5.) This Act provides that "[a] sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence." 5 U.S.C. § 556. In addition, "[t]he record shall show the ruling on each finding, conclusion, or exception presented. All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of--

**(A)**    findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record; and

**(B)**    the appropriate rule, order, sanction, relief, or denial thereof.

5 U.S.C. § 557(c).

Plaintiff claims that the ALJ only considered Plaintiff's March 27, 2015 pre-hearing brief, the SSA's November 1, 2014 decision, and the SSA's February 2, 2015 decision, but he did not consider "the eight other SSA documents appearing in the record." (DE 14 at 13.)[8] This cannot be entirely true, as the ALJ expressly

---

[8] Seemingly, Plaintiff is referring to the earlier-filed notices dated June 9, 2009 (R. at 28-30), March 8, 2011 (R. at 81-83), June 12, 2013 (R. at 114-121), July 10, 2013 (R. at 123-124), January 4, 2014 (R. at 127-130), March 18, 2014 (R. at 131-133), June 4, 2014 (R. at 156-160), and July 2, 2014 (R. at 161-162).

cited the June 9, 2009 notice of award.  (R. at 15, 28-30).  However, even if the

ALJ did not expressly cite the 7 other earlier-filed notices (dated from March 8,

2011 through July 2, 2014), he expressly cited the two most recent notices - the

November 1, 2014 and February 2, 2015 decisions.  (R. at 15-17.)  That the ALJ

did not expressly cite a particular exhibit is not fatal, as ALJ is not obligated to

expressly mention each piece of evidence.  *Bailey v. Comm'r of Soc. Sec.*, 413 F.

App'x 853, 855 (6th Cir. 2011) (an ALJ "is not required to analyze the relevance of

each piece of evidence individually.  Instead, the regulations state that the decision

must contain only 'the findings of facts and the reasons for the decision.'")

(quoting 20 C.F.R. § 404.953).

In Plaintiff's opinion, the ALJ has not provided "any explanation for a

reviewer to understand why he [1] did not consider the 2012 decision of his SSA

colleague or [2] omit[ed] the 2010 refund[.]"  (DE 14 at 15.)  Plaintiff takes the

position that merely citing Section 211 and concluding that his claims were "not

corroborated by the evidence of record . . . [,]" (*see* R. at 16-17), "did not fulfill the

substantial explanation requirement standards of these statutes and precedents."

(DE 14 at 15; *see also* DE 16 at 5-6.)

To the extent Plaintiff argues that the ALJ's decision does not "provide

reasons for the conclusions stated to permit an informed review[,]" (DE 16 at 5),

the Court should disagree.  Preliminarily, as noted above, Plaintiff's 2010 refund

was not the subject of Plaintiff's March 17, 2015 request for hearing by an ALJ.
(R. at 182.)  More to the point, even if the ALJ did not expressly cite the June 4,
2014 decision, his decision on the issue about which Plaintiff is concerned –
recognition of Form 2106 amounts – is clear.  First, after having referenced
Plaintiff's November 7, 2014 "initial request for reconsideration," and with express
citation to the February 2, 2015 notice, the ALJ stated that, based on the
regulations, "the only allowable deduction from wages is a self-employment
income ('SEI') loss[.]"  (R. at 16, R. at 168, 175-180.)  The ALJ's determination
that Plaintiff was overpaid benefits in the amount of $1,081 in 2011 is consistent
with the February 2, 2015 notice and is an amount Plaintiff "does not dispute."  (R.
at 16-17, 179-180; DE 14 at 9.)  Second, the ALJ cited Plaintiff's March 17, 2015
request for hearing and Plaintiff's pre-hearing brief, ultimately reiterating that "the
aforementioned portions of the Act considered in conjunction with the regulations
only allow for a deduction of SEI loss from his total wages . . . ."  (R. at 17, 182,
183-202.)  Third, the ALJ cited Plaintiff's 2012 and 2013 tax returns (Exhibits 6
and 13), as well as Plaintiff's certified earnings records (Exhibit 30).  (R. at 17.)
He then explained how he arrived at the conclusion that "the proper amount of
benefits to be withheld" for 2012 "is $14,202.00[.]"  (*Id.*)[9]  Fourth, the ALJ made a

---

[9] The amount used for social security wages – $59,548 – is consistent with the
certified earnings record as to 2012 (R. at 226), the SEI loss – $16,503 – is

similar calculation as to 2013 and, while he acknowledged that "it does not appear that any withholding of benefits is appropriate for this year . . . [,]" he deferred "any further development . . . to the payment center component of the [SSA][.]" (*Id*.)

Therefore, considering the issues as framed by Plaintiff's March 17, 2015 request for hearing by an ALJ (R. at 182), the ALJ's opinion is consistent with having considered "all available evidence related to the overpayment[,]" 20 C.F.R. § 404.522, and he stated his "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record[.]" 5 U.S.C. § 557(c)(A).

### 4.    Whether the SSA is bound by its June 4, 2014 notice?

The June 4, 2014 notice appears to have adjusted his 2012 earnings based on Form 2106-EZ numbers.  (R. at 156-160.)  Plaintiff explains that "an SSA reviewer . . . revised downward [Plaintiff's] 2012 income, accepting his work-related expenses to adjust income[.]"  (DE 14 at 14; *see also* DE 14 at 16, DE 16 at 5.)

### a.    Failure to expressly cite the June 4, 2014 notice

Plaintiff claims the ALJ did not review the June 4, 2014 determination within his September 16, 2015 decision and that this calls into question the ALJ's

consistent with Plaintiff's Schedule C for 2012 (R. at 87), and Court has no reason to doubt that $14,640 was the excess earnings threshold for 2012.  (*Id*.)

statement that "claimant's assertion regarding a previous allowance of work-related expense deductions by the Social Security Administration is not corroborated by the evidence of record . . . ." (DE 14 at 16, R at 17.)

Preliminarily, as noted above, the ALJ is not required to cite each piece of evidence. *Bailey,* 413 F. App'x at 855. More importantly, even if this was a mis-statement by the ALJ, he went on to explain that "the aforementioned portions of the Act considered in conjunction with the regulations only allow for a deduction of SEI loss from his total wage in determining the amount of benefits to be withheld." (R. at 17.) This conclusion was not likely to change with the ALJ's express citation and consideration of this piece of evidence. (DE 14 at 16, DE 16 at 6.) And, for all this Court knows, the ALJ may well have considered it and rejected it. In sum, the ALJ's failure to recognize Form 2106-EZ numbers is unchanged by a prior SSA reviewer's decision, to the extent it was not in accordance with the related statutes.

### b. *Respondeat superior*

Plaintiff asks the Court to affirm the June 4, 2014 decision, because it stood until November 1, 2014 (150 days) and was "a financial decision upon which [he] relied[.]" (DE 14 at 17; *see also* DE 14 at 21.) Also, Plaintiff contends that, when the erroneous November 1, 2014 decision was reviewed 93 days later on February 2, 2015, it "only provided a complete review for 2011," on the basis that "no data

w[as] available for 2012 or 2013." (*Id.*, R. at 179)  Therefore, Plaintiff questions

whether the June 4, 2014 decision – which the ALJ did not specifically cite – is

"the reigning operative 2012 decision, prior to the ALJ's ruling[.]"  (DE 14 at 18.)

Plaintiff claims that "[t]his presents a foundation for *respondeat superior . . .* [,]"

and the SSA should "be required to uphold the income adjustments provided for

2012 in Ms. Brinson's June 2014 decision."  (DE 14 at 18; *see also* DE 14 at 21.)

Plaintiff asks the Court to "attach[] liability for Ms. Brinson's decisions to the SSA

commissioner."  (DE 14 at 20.)

     Plaintiff's various precedential and *respondeat superior* arguments are

unavailing.  Although several SSA opinions came before the administrative

hearing, the ALJ was not wed to the SSA reviewer's June 4, 2014 interpretation of

the statutes and/or regulations (R. at 156-160), especially considering the SSA's

subsequent, February 2, 2015 position that "the only allowable deduction from

wages is a self-employment income (SEI) loss[,]" (R. at 175-180), and he opined

on this issue (R. at 16-17).  *See* 20 C.F.R. § 404.946(a) ("The issues before the

administrative law judge include all the issues brought out in the initial,

reconsidered or revised determination that were *not decided entirely in your favor*.

However, if evidence presented before or during the hearing causes the

administrative law judge to question a fully favorable determination, he or she will

notify you and will consider it an issue at the hearing.") (emphasis added).  Thus,

*respondeat superior*, which is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency[,]" Black's Law Dictionary (10th ed. 2014), does not apply in the context of determining an overpayment calculation.  (DE 15 at 13.) Even if it did, and even if Plaintiff financially relied upon the June 4, 2014 determination, the Commissioner points out that "Plaintiff must apply to the agency for a waiver of the recovery of the overpayment . . . [,]" presumably by the procedure set forth in the November 1, 2014 notice of change in benefits.  (DE 15 at 14, R. at 163-164.)  There is no evidence before this Court that he did.

## I.      Conclusion

As noted above, the ALJ's decision addressed the issue as framed by Plaintiff in his request for review, the ALJ is bound by the law as it stands at the time of his decision, the ALJ's review of the evidence was appropriate, and the SSA is not bound by the SSA reviewer's prior decision where it is not in accordance with the related statutes.  Therefore, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 15), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 1, 2019          s/*Anthony P. Patti*
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE

## **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 1, 2019, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti